IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

ZACHARY SMITH,                          )
                                        )
            Petitioner,                 )
                                        )
vs.                                     )        Case No. 07-06068-CV-SJ-ODS
                                        )
MIKE KEMNA,                             )
Superintendent,                         )
Crossroads Correctional Center          )
                                        )
            Respondent.                 )

## ORDER AND OPINION DENYING PETITION FOR WRIT OF HABEAS CORPUS

        Pending is Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254.  After reviewing the Record and the parties' arguments, the Court

concludes the Petition must be denied.


## I. BACKGROUND


        Petitioner Zachary Smith is presently incarcerated at the Crossroads Correctional

Center in Cameron, Missouri, in the custody of Respondent.  He was convicted by a jury

in Jackson County, Missouri of first degree murder and armed criminal action and

sentenced to concurrent terms of imprisonment of life without the possibility of parole

and ninety-nine years.  In this action, Petitioner alleges eight grounds for relief involving

ineffective assistance of counsel, prosecutorial misconduct, and trial error.

        The following recitation of facts comes from the Missouri Court of Appeals'

opinion affirming the denial of post-conviction relief in this case:

            On June 23, 1995, at around 10:00 p.m., Smith and two other men, Kevin
        Glavin and Jose Sosa, were driving around in a maroon-colored vehicle when
        they stopped to talk to Derek Hoskins.  Smith told Hoskins to get into the car, and
        Sosa put the bicycle Hoskins had been riding into the car's trunk.  Smith
        persuaded Hoskins, who owed Smith money, to burglarize a house to repay him.
        After the burglary, Smith drove the three others to Cliff Drive, a remote area in

the northeast part of Kansas City. While there, Smith shot Hoskins in the head, then drove off and left him lying in the street.

Two security officers in the area reported that they heard gunshots sometime between 3:00 and 4:00 a.m. on June 24th. After receiving a report of someone lying in the street, the security officers drove to the scene, where they found Hoskins' dead body. Investigating officers found two spent .45-caliber bullets and two .45-caliber shell casings on the ground near Hoskins' body. The police later found two .45-caliber shell casings on the ground at Smith's residence and two more near Smith's father's house at 411 Indiana, where Smith recently had been staying. A criminalist from the Kansas City Regional Crime Laboratory determined that all six shell casings had been fired from the same .45-caliber pistol.

Lori Stone, who lived next door to Smith's father's house, told an officer that two weeks before Hoskins' death, she saw Smith fire a black .45-caliber handgun into the air twice. Her sister-in-law, Catherine, told officers that she also had seen Smith shoot his gun into the air.

Kevin Glavin, one of the occupants of the car, gave a statement to the police, in which he provided the details of the murder and identified Zachary Smith as the murderer. When the police went to arrest Smith, they found him hiding under a bed. In his statement to the police, Smith said that he and several friends had been bowling on the night of the murder and that they then went to his father's house, where they remained until 11:00 a.m. the next morning. Smith denied owning a gun, claimed not to know Glavin, and stated that he had not seen Hoskins for a month. He also told police that he did not have Hoskins' bicycle, he had not been in a maroon car, and he had not been to Cliff Drive in at least three to four months.

Much of what Smith told the police was refuted by others. Sosa's girlfriend told police that Smith, Sosa, and Glavin had arrived at her house the morning after the murder in a burgundy or red car and that Smith had a gun tucked into his waistband. Catherine Stone also reported seeing Smith standing next to a maroon car later that morning. Another witness testified that on the night of the murder, she saw Hoskins talking to Smith and two other men and then get into Smith's car. She also saw one of the men put Hoskins' bicycle into the trunk. Police recovered Hoskins' bicycle from a young boy who testified at trial that Smith had given it to him after the murder.

Cynthia Frost, Smith's girlfriend and co-habitant, signed a form consenting to the search of Smith's house. In one of the bedrooms, police detectives found a locked safe. Frost told the officers that the safe was "her and Zach's" and authorized them to open it. The detectives carried the safe out to the front porch, where they forced it open using a hammer, a crowbar, and a heavy-duty

screwdriver. Inside the safe the detectives found a small bag containing several live .45 rounds and an empty box of .45-caliber ammunition. The safe also contained Zachary Smith's Missouri identification card and a Missouri inmate card for Jose Sosa.

Smith v. State, No. WD 65643, slip op. at 1-3 (Mo. Ct. App. Sept. 19, 2006).

The Missouri Court of Appeals affirmed Petitioner's conviction on September 24, 2002. See State v. Smith, 90 S.W.3d 132 (Mo. Ct. App. 2002). The court later affirmed the denial of Petitioner's motion for post-conviction relief. See Smith v. State, No. WD 65643, slip op. (Mo. Ct. App. Sept. 19, 2006). Petitioner's Petition for Writ of Habeas Corpus now raises eight grounds for relief involving ineffective assistance of counsel, prosecutorial misconduct, and trial error.

## II. DISCUSSION

An application for a writ of habeas corpus cannot be granted unless the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."*

3

Shafer v. Bowersox, 329 F.3d 637, 646-47 (8th Cir. 2003) (emphasis added) (quoting Williams v. Taylor, 529 U.S. 362, 405, 411, 413 (2000)). In addition, the Court must defer to the state courts' findings of fact, presuming them to be correct unless they are not fairly supported by the record. Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002), cert. denied, 538 U.S. 923 (2003).

A. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [Petitioner] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (stating there is no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"). "An ineffective assistance of counsel claim is a mixed question of law and fact." McReynolds v. Kemna, 208 F.3d 721, 723 (8th Cir. 2000). Consequently, the state courts' findings of historical fact are entitled to a presumption of correctness, and their application of Strickland to those facts must stand unless they applied those standards

4

in an unreasonable manner.

Petitioner presents five allegations of ineffective assistance of counsel. Claims of ineffective assistance cannot be considered cumulatively; each claim of ineffective assistance of counsel must rise or fall on its own merits. E.g., Pryor, 103 F.3d at 714 n.6; United States. v. Stewart, 20 F.3d 911, 917-18 (8th Cir. 1994). Consequently, the Court will consider the allegations separately.

### i. Failing to interview and call as a witness Alvino Carrillo

At trial, the state presented evidence that shells collected at Petitioner's father's residence at 411 Indiana Street in Kansas City, matched the shells that killed Mr. Hoskins. The State also presented statements of witnesses Catherine and Lori Stone that Petitioner had fired a weapon into the air at 411 Indiana two weeks before Mr. Hoskins' death. Alvino Carillo allegedly would have testified about an incident two weeks before the murder in which he was with Petitioner and Sosa at 411 Indiana. He would have testified that Sosa, not Petitioner, exchanged gun fire with a passing car during that incident. Carillo, who was incarcerated at the time of Petitioner's trial, said he was available and willing to testify at the time of trial but was never contacted. Petitioner presented a letter he wrote to his trial counsel identifying Carrillo as a possible witness. Petitioner also testified that had counsel called Carrillo as a witness to corroborate his story, Petitioner would have testified on his own behalf.

The post-conviction court held, and the court of appeals agreed, that Petitioner had not overcome the Strickland presumption that decisions by trial counsel are strategic because Petitioner did not present his attorney's testimony at the post-conviction hearing.[1] Without his counsel's testimony, the court held, Petitioner could not demonstrate that his counsel's decision was not based on reasonable trial strategy. The court noted that Petitioner's letter to his counsel concluded "Mr. Carillo has a record for selling drugs, so I don't know if you want to use him." Additionally, the court found that Carillo's testimony would not have been very helpful to Petitioner because not only

---

[1] Petitioner's trial counsel had relocated to California. Petitioner was unable to serve him despite substantial efforts to do so.

did it "not pertain to the night of the murder, it also is not clear that the shooting incident Carrillo referred to is the same one the State's witnesses described. The State's witnesses described an incident where Smith fired a gun into the air, while Carillo described two groups of individuals shooting at each other." <u>Smith</u>, No. WD 65643, slip op. at 15.

The court also held that Petitioner had not demonstrated any resulting prejudice from not calling Carrillo to testify based on the other overwhelming evidence of Petitioner's guilt and concluded it was "unlikely that [Petitioner's] decision on whether to testify in his own defense would have hinged on such a peripheral matter." <u>Id.</u> at 16. This Court agrees. Even assuming trial counsel's decision not to investigate Mr. Carillo as a possible witness was unreasonable, there is no reasonable probability that the verdict would have been any different if Mr. Carrillo had testified. Accordingly, Petitioner has not satisfied the prejudice prong of <u>Strickland</u>.

### ii. Failing to object to line of questioning by prosecutor

Petitioner argues that his trial counsel was ineffective for failing to timely object and to request a limiting instruction regarding allegedly improper questioning by the prosecutor. Glavin, who had testified in an earlier trial that he witnessed the murder, claimed he had lost his memory of the event at this trial. The prosecutor attempted to demonstrate that his memory loss was feigned and was the result of a hallway encounter between Glavin and Petitioner's brother, Torrid (Tory) Smith, before Glavin testified. The prosecutor asked Glavin:

> Q: Okay. Do you remember what just happened out in the hall a little bit ago, maybe 10, 15 minutes ago?
> A: What are you referring to?
> Q: You know what I am referring to. I was out there, went into the hall and you were there walking this way, and the defendant's brother Tory Smith walked by you.
> Remember what happened out there?
> A: No, Sir.
> Q: You don't remember Tory nodding to you? You don't remember –
> A: No.

Trial Tr. at 480-81.

6

Petitioner's counsel objected. Out of the presence of the jury, the prosecutor explained that the purpose of discussing the hallway incident was to show that Glavin did not really lose his memory. The judge stated that he would allow the questioning. Petitioner's counsel then asked the court to give a limiting instruction so that the jury should not "infer that his brother's actions were in any way known to [Zachary Smith]." The court then stated that it would "allow the question," and suggested that if trial counsel would request such an instruction after the answer was given, then "I'll be happy to."

Resuming the questioning, the prosecutor asked Glavin:

Q: A little bit ago when we were out there in the hallway, 10 to 15 minutes ago, the brother of the defendant walked by, he nodded, he went like this (indicating) and the *defendant*[2] nodded again. Didn't that happen? (Emphasis added).

A: No, sir. I have only heard Zach's brother by name. I don't know Zach's brother.

Trial Tr. at 485.

Petitioner's counsel objected on the basis that Glavin's answer was nonresponsive, and the court sustained the objection. Counsel did not seek a limiting instruction. The prosecutor then moved on to a different line of questioning.

The post-conviction court found that another objection by counsel to the prosecutor's questioning would have been non-meritorious because the prosecutor did nothing outside the court's instructions other than mistakenly indicate that it was Petitioner that nodded instead of his brother. Additionally, the court held that even if counsel's failure to request a limiting instruction was not based on reasonable trial strategy, Petitioner had not demonstrated how the discussion of Petitioner's brother's actions may have influenced the jury's decision. Rather, it is not reasonably likely that

---

[2] At the post-conviction motion hearing the prosecutor acknowledged that he misspoke when he said "the *defendant* nodded again." The court found that it was an obvious misstatement in which the prosecutor intended to say the *defendant's brother* nodded again. The court further stated that the jury would have recognized it as a mere misstatement because there was every indication that the defendant was never present in the hallway.

the jury's verdict would have been different if it had been instructed that Petitioner had no knowledge of his brother's conduct in the hallway, conduct that Glavin testified had never occurred. Moreover, because Glavin denied the incident, the need for the limiting instruction as worded disappeared; Petitioner did not need to disassociate himself from a nonevent. Thus, Petitioner's claim of ineffective assistance of counsel on this point must be denied.

*iii. Failing to object to jury's viewing of videotaped statement during deliberations*

Because Glavin repudiated his statement describing the night of the murder and Petitioner as the shooter, Glavin's pretrial videotaped statement was played for the jury during trial. Petitioner acknowledges that Missouri law allows the use of the prior videotaped statement. During deliberations, the jury requested to see the videotape again. Trial counsel did not object, and the trial court granted the request. The jury was brought into the courtroom, the entire videotape was played for them, and the jury returned to the jury room to continue deliberations.

Petitioner argues that his counsel did not act as a reasonably competent attorney by failing to object to the replaying of the videotape. However, the court of appeals found that any such objection would have been meritless. The court noted that under Missouri law the general rule is that exhibits that are testimonial in nature should not be given to the jury during its deliberations. State v. Evans, 639 S.W.2d 792, 795 (Mo. 1982). However, the court stated that there are exceptions for confessions by the defendant and for a witness' out-of-court statement that contains admissions by the defendant. State v. Jennings, 815 S.W.2d 434, 440 (Mo. Ct. App. 1991).

The court of appeals found that Glavin's videotaped statement fit the second exception because it recounted numerous admissions by Petitioner, including his statement that he was the "mastermind" of Hoskins' murder. Accordingly, counsel's performance cannot be deficient for failing to object to admissible evidence. Furthermore, Petitioner has failed to demonstrate how the replaying of the videotape was prejudicial. Therefore, Petitioner's claim of ineffective assistance of counsel must fail.

*iv. Failing to impeach State's witness*

Petitioner contends that his counsel was ineffective in failing to impeach Glavin's testimony with evidence of a prior false statement Glavin gave to police regarding a separate offense. After getting caught on videotape stealing cigarettes, Glavin denied doing so and implicated another person as the perpetrator. The court of appeals held that Petitioner had not established prejudice; Glavin's credibility had already been attacked, not only by evidence of two prior convictions, but also by the fact that he was present during the murder and therefore had a motive to protect himself. This Court agrees that Glavin's credibility was already significantly undermined. Therefore, additional impeachment evidence that he lied to police about stealing cigarettes would have had no reasonable probability of changing the jury's verdict in this case. Accordingly, Petitioner has failed to satisfy Strickland's two-prong test for establishing ineffective assistance of counsel.

*v. Failing to present certain evidence in support of motion to suppress*

Petitioner claims his counsel was ineffective in failing to present certain evidence in support of his motion to suppress evidence found during a search of a safe in Petitioner's house. The police obtained consent to search the house and safe from Petitioner's girlfriend and co-habitant, Cynthia Frost. According to Petitioner, counsel should have supported the motion to suppress with evidence of (1) Petitioner's order of protection against Ms. Frost, (2) the Kansas City Police Department's policy requiring consent for searches to be in writing,[3] and (3) Petitioner's civil rights action against the officers who conducted the search.

On direct appeal, the court of appeals rejected Petitioner's claim that the search of the safe was unlawful. The court relied on Illinois v. Rodriguez, 497 U.S. 177, 186 (1990), for the proposition that a warrantless search based on consent is valid if the

_____

[3] The police obtained written consent to search the house but only oral consent to search the safe.

9

police officers involved reasonably believed that the person granting consent had the authority to do so, even if that belief later turns out to be erroneous. The key question is whether the facts available to the officers at the time of the search would warrant a person of reasonable caution to believe that the consenting party had authority over the premises. Id. at 188-89. The evidence at the suppression hearing was that Ms. Frost was a co-habitant of the house, she signed a consent form for the search of the house, she informed the police that the safe belonged to both her and Petitioner, and she gave her verbal consent to open the safe. The court of appeals found that "these facts would warrant a person of reasonable caution to believe that Frost had authority over the safe," and therefore had authority to consent to its search. Smith, 90 S.W.3d at 141-42.

In its post-conviction motion order, the court of appeals held that the additional evidence would not have altered its original holding. Rather, Ms. Frost's assertion that she was a co-owner of the safe is not refuted by the order of protection. Likewise, the Department policy on obtaining written consent does not show that the officers could not reasonably rely on Ms. Frost's claim that she had the authority to consent. Petitioner's civil rights action, which was initiated after the search occurred, also could not impact the officers' reasonable reliance on Ms. Frost's consent.

The court of appeals then went on to state that the outcome of the trial would not likely have been affected even if the evidence in the safe had been suppressed. Rather, as the court of appeals noted in Petitioner's first direct appeal:

> [T]he only evidence found in the safe were seven live .45 caliber rounds of ammunition. . . .The probative value of the live ammunition found in Smith's safe was minimal. The most that evidence could have established for the jury was that Smith owned or had access to the same type of ammunition used in the killing, although, from the testimony at trial, it is questionable whether those rounds were even the same type used to kill Hoskins.

Smith, 966 S.W.2d 1, 9 (Mo. Ct. App. 1997). The court of appeals concluded that "[i]n light of the other evidence of Smith's guilt and the relative insignificance of the evidence found in the safe," counsel's failure to introduce the additional documents in support of the motion to suppress likely did not affect the outcome of the trial. Smith, No. WD 65643, slip op. at 21. This determination was not an unreasonable application of

10

Strickland v. Washington and must therefore be left undisturbed.

B. Prosecutorial Misconduct

    *i. Improper line of questioning*

    As discussed in section II.A.ii. above, Petitioner argued that his trial counsel was ineffective for failing to object to an allegedly improper line of questioning by the prosecutor. Petitioner also raises a substantive claim of prosecutorial misconduct, alleging the prosecutor "testif[ied]" through his questions about what he witnessed in the hallway between Petitioner's brother and Glavin. The court of appeals held that the claim was not preserved for appellate review because three questions were asked and answered concerning the hallway incident before counsel objected. The court then stated that the conduct did not rise to the level of plain error.

    Because the court of appeals reviewed for plain error, the issue becomes whether the review for plain error excuses the procedural default. There are conflicting panel decisions from the Eighth Circuit on this issue. See Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir.), cert. denied, 118 S. Ct. 189 (1997) (noting conflict); Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996), cert. denied, 117 S. Ct. 1117 (1997) (same). Until the issue is resolved by either the Supreme Court or the Eighth Circuit sitting en banc, federal courts in this circuit must pick one of the two lines of cases to follow. Hornbuckle, 106 F.3d at 257 ("Although we cannot resolve this divergence in our holdings, we may choose which line of cases to follow."). The decision as to which line of cases to follow appears to be discretionary. Sweet, 125 F.3d at 1152. In this case, the Court will also review for plain error, but such review is highly deferential. See James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999) (stating that plain error review of a claim defaulted in state court should not be *de novo* plain error review, but rather should be based on the standard that relief will be denied unless any reasonable judge would have *sua sponte* declared a mistrial).

    "The test for prosecutorial misconduct has two parts. First, the remarks must have been improper, and second, the remarks must have been so prejudicial as to deprive the defendant of a fair trial." Young v. Bowersox, 161 F.3d 1159, 1162 (8th Cir.

11

1998), <u>cert. denied</u>, 528 U.S. 880 (1999). Needless to say, if the remarks were not improper, there is no unfair prejudice to be gauged and the second component of the analysis is unnecessary. However, in the event an improper comment is revealed, it must be remembered that the standard of prejudice is relatively high. "The petitioner must show that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.' Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different." <u>Newlon v. Armontrout</u>, 885 F.2d 1328, 1336-37 (8th Cir. 1989), <u>cert. denied</u>, 497 U.S. 1038 (1990) (quoting <u>Moore v. Wyrick</u>, 760 F.2d 884, 886 (8th Cir. 1985) (second quotation omitted); <u>see also</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

Petitioner contends that in questioning Glavin about the hallway incident, the prosecutor violated the court's restrictions on the questioning, interjected his own personal opinion into the trial, and improperly asked about "facts" he knew to be false. As discussed in section II.A.ii. above, even assuming the prosecutor's questions were improper, Petitioner has not demonstrated the requisite prejudice. The trial transcript as quoted above shows that the prosecutor only asked a few questions regarding the hallway incident and moved on quickly after Glavin denied knowing Petitioner's brother. Accordingly, Petitioner has failed to show "that absent the alleged impropriety, the verdict probably would have been different."

### ii. Alleged threats to witness

Petitioner also alleges that the prosecutor threatened Catherine Stone in order to obtain favorable testimony. Petitioner failed to raise this allegation on direct appeal. The post-conviction court of appeals noted that claims of prosecutorial misconduct are generally not cognizable in a Rule 29.15 proceeding. <u>Tisius v. State</u>, 183 S.W.3d 207, 212 (Mo. banc 2006). Nevertheless, the motion court reviewed the claims and stated that Petitioner had failed to produce any evidence to support his allegation that the prosecutor had suborned perjury from Ms. Stone. Petitioner's claim must fail.

12

C. Trial Error

Petitioner alleges his due process rights were violated when the jury was permitted to view the videotaped statement of Kevin Glavin during its deliberations. As discussed in section II.A.iii., trial counsel did not object to the jury viewing this exhibit. On direct appeal, the court of appeals stated that the claim of error was not preserved and then proceeded to find no plain error. Accordingly, this Court can also review for plain error, but such review is highly deferential to the state court's determination. <u>See James v. Bowersox</u>, 187 F.3d 866, 869 (8th Cir. 1999).

The court of appeals stated that whether to send an exhibit to the jury during deliberations is a matter within the discretion of the trial court, citing <u>State v. Barnett</u>, 980 S.W.2d 297, 308 (Mo. banc 1998). Even if this Court accepts Petitioner's claim that the state evidentiary ruling was in error, "not every trial error amounts to a constitutional deprivation." <u>Anderson v. Goeke</u>, 44 F.3d 675, 679 (8th Cir. 1995). The Eighth Circuit has consistently recognized that in a § 2254 habeas corpus proceeding, "a federal court's review of alleged due process violations stemming from a state court conviction is narrow." <u>Id.</u> (citing <u>Newlon v. Armontrout</u>, 885 F.2d 1328, 1336 (8th Cir. 1989), <u>cert. denied</u>, 497 U.S. 1038 (1990)).

Accordingly, this Court will reverse a state court evidentiary ruling only if the "petitioner . . . show[s] that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his trial fundamentally unfair. To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." <u>Id.</u> (quotations omitted). Petitioner merely makes the broad assertion that "[p]ermitting the jury to hear [Glavin's] 'testimony' twice was highly prejudicial to Mr. Smith." Traverse at 9. Petitioner has failed to carry his burden in demonstrating prejudice.

### III. CONCLUSION

For the foregoing reasons, Petitioner's application for relief pursuant to 28 U.S.C.

13

§ 2254 is denied.

IT IS SO ORDERED.

                                        /s/ Ortrie D. Smith
                                        ORTRIE D. SMITH, JUDGE
DATE: January 29, 2008                  UNITED STATES DISTRICT COURT